**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| UNITED STATES, <u>ex rel</u>. | ) | |
| WESTRICK, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | **Civil Action No. 04-280 (RWR)** |
|  | ) | |
| SECOND CHANCE, <u>et al.</u>, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The government, by relator Aaron J. Westrick, filed a
complaint against defendants Second Chance Body Armor, Inc. and
related entities (collectively "Second Chance"), Toyobo Co., Ltd,
Toyobo America, Inc. (collectively "Toyobo"), and individual
defendants Thomas Bachner, Jr., Richard Davis, Karen McCraney,
and James McCraney, alleging violations of the False Claims Act
("FCA"), 31 U.S.C. §§ 3729-33, as well as common law claims in
connection with the sale of allegedly defective Zylon body armor.
The individual defendants moved for a stay of the civil
proceedings in anticipation of a criminal indictment.  Davis also
filed a motion for an extension of time to answer the
government's amended complaint citing the difficulty of defending
against both civil and criminal proceedings.  Because a criminal
indictment has not proven to be imminent and pre-indictment stays
are not favored, defendants' motions for a stay will be denied

- 2 -

without prejudice to re-file if a criminal indictment is returned.

BACKGROUND

In February 2004, Aaron Westrick, a former employee of Second Chance, filed a qui tam action against Second Chance and Toyobo under the FCA.  The Justice Department's civil enforcement divisions intervened under 31 U.S.C. § 3730(a)(2), and filed an amended complaint on September 19, 2005, adding four Second Chance executives as individual defendants -- Bachner, Davis and the McCraneys.  The amended complaint asserted claims against all defendants for (1) violations of the FCA, including presentation of false or fraudulent claims, false statements and conspiracy to defraud, (2) common law fraud, and (3) unjust enrichment.  Claims for payment by mistake and breach of contract were asserted against only Second Chance.  The allegations concerned concealment of and misrepresentations about lethal defects in bullet-resistant vests manufactured for use by law enforcement officers throughout the country.

In the fall of 2005, a Justice Department criminal prosecutor, Assistant United States Attorney James Flood, represented that there was an ongoing criminal investigation of Davis and the McCraneys, involving substantially the same allegations of fraudulent behavior as those made in the civil case, and that an indictment would be filed in the "near future."

- 3 -

(Davis Mot. to Stay, Berman Decl. ¶ 4; McCraney Mot. to Stay, Beck Decl. ¶ 4.)  The Department of Justice informed Davis on February 22, 2006 that evidence was being presented to a grand jury and an indictment would be forthcoming.  In March 2006, Flood reiterated to Davis' and the McCraneys' attorneys that evidence would soon be submitted to the grand jury and that criminal charges were "certain and imminent."  (Davis Mot. to Stay, Berman Decl. ¶ 6; McCraney Mot. to Stay, Beck Decl. ¶ 6.) Finally, on April 12, 2006, Flood stated in a telephone call with Bachner's attorney that Bachner was also under criminal investigation for the matters alleged in the civil lawsuit. (Bachner Mot. to Stay, Brady Decl. ¶ 4.)

The defendants moved to stay the civil case pending the disposition of any related criminal proceedings arguing that their Fifth Amendment self-incrimination privilege will be implicated and that having to defend against simultaneous civil and criminal actions will be overwhelming.  No criminal indictment has been returned against any of the defendants.[1]

DISCUSSION

The decision to grant or deny a motion to stay proceedings is left to the sound discretion of the court, "in the light of

---

[1]     Davis also moved for an extension of time to answer the government's amended complaint, requesting that his answer be due ten days after the disposition of his motion to stay.  (Davis Mot. for Extension of Time at 1.)  Davis' motion for extension of time will be granted.

- 4 -

the particular circumstances of the case." Sec. and Exchange
Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir.
1980); see also Gordon v. Fed. Deposit Ins. Corp., 427 F.2d 578,
580 (noting that because "the compensation and remedy due a civil
plaintiff should not be delayed (and possibly denied)[,]" a court
"in its sound discretion, must assess and balance the nature and
substantiality of the injustices claimed on either side").
However, there is no presumption favoring a pre-indictment stay
of a parallel civil action until the conclusion of criminal
proceedings. See Dresser, 628 F.2d at 1374 (citing Standard
Sanitary Mfg. Co. v. United States, 226 U.S. 20, 52 (1912))
(affirming district court's denial of a pre-indictment motion to
quash administrative subpoena); Fed. Savings & Loan Ins. Corp. v.
Molinaro, 889 F.2d 899, 903 (9th Cir. 1989) (noting that the
court did not abuse its discretion by denying a pre-indictment
stay given that "[t]he case for staying civil proceedings is a
far weaker one where no indictment has been returned, and no
Fifth Amendment privilege is threatened" (internal citation
omitted)).  "[T]he mere relationship between criminal and civil
proceedings, and the resulting prospect that discovery in the
civil case could prejudice the criminal proceedings, does not
establish the requisite good cause for a stay." Horn v. Dist. of
Columbia, 210 F.R.D. 13, 15 (D.D.C. 2002) (internal citation
omitted) (denying government's request for a stay of civil

- 5 -

discovery of police files pending criminal investigation of
plaintiffs).

A number of factors have commonly been weighed when a party
has moved for a stay of civil proceedings in light of parallel
criminal proceedings.  Courts have considered whether the issues
in the civil action are related to the issues in the criminal
investigation; the convenience of the courts in the civil and
criminal matters; what hardship or inequality the parties would
face if required to move forward on the civil case while the
criminal case was proceeding; and whether the duration of the
requested stay is within reasonable limits.  See, e.g., Barry
Farm Resident Council, Inc. v. U.S. Dept. of Navy, Nos. 96-1450,
96-1700, 1997 WL 118412, at *1 (D.D.C. Feb. 18, 1997) (citing
Molinaro, 889 F.2d at 903) (listing "the interests of the
plaintiffs in proceeding expeditiously with the civil litigation
as balanced against the prejudice to them if it is delayed; the
public interest in the pending civil and criminal litigation; the
interests of and burdens on the defendant; . . . and the
convenience of the court in the management of its cases and the
efficient use of judicial resources"); Birge v. Dollar Gen.
Corp., Civil Action No. 04-2531, 2005 WL 3448044, at *2 (W.D.
Tenn. Dec. 14, 2005) (listing as factors "(1) the extent to which
the issues in the civil and criminal proceedings overlap; (2) the
status of the criminal proceedings; (3) the plaintiff's interests

- 6 -

in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the hardship on the defendant; [and] (5) the convenience of both the civil and criminal courts").

Here, the government does not contest that there is an overlap between the facts important to the civil action and to any potential criminal indictment.  (Gov't Opp'n to Defs.' Mot. to Stay at 11.)  That, in part, has prompted the individual defendants to complain that they face a difficult choice.  If they invoke their Fifth Amendment right to decline to respond to civil discovery to protect against those responses producing evidence that could lead to their criminal convictions, those invocations could be used to establish their civil liability.  If they respond to civil discovery to avoid the use of an invocation of the Fifth Amendment being used as probative of consciousness of civil liability, then incriminating responses could lead to their criminal convictions.

The threat here of an imminent indictment has not come to pass in the year it has loomed.  The government's civil enforcement interest in proceeding expeditiously with the case it has already brought against defendants alleged to have put the lives of law enforcement officers in grave danger at this point is as significant as the prejudice to their case that would result from further delay caused by the criminal prosecutors'

- 7 -

inaction.  The public interest in proceeding with an important
civil enforcement matter that has already been filed seems to
outweigh speculation about if and when an indictment will be
returned.  This case has been on the court's docket now for three
years, and prudent docket management weighs against it
languishing further.

"[T]he strongest case for deferring civil proceedings until
after completion of criminal proceedings is where a party under
indictment for a serious offense is required to defend a civil or
administrative action involving the same matter." Dresser, 628
F.2d at 1375-76.  It is a weaker case where, as here, no
indictment has been returned, id. at 1376; Molinaro, 889 F.2d at
903 (relying on Dresser to note that "[t]he possibility that
criminal indictments would be brought against Molinaro may have
made responding to civil charges more difficult for him, but the
court did not abuse its discretion by deciding that this
difficulty did not outweigh the other interests involved"), and
the threat of an imminent indictment has proven illusory.  Even
when a criminal indictment has been handed down, some courts have
found unpersuasive defendants' arguments that the exercise of
their Fifth Amendment rights would be prejudiced.  See Barry Farm
Resident Council, Inc., 1997 WL 118412, at *3 (quoting United
States v. Lot 5, 23 F.3d 359, 364 (11th Cir. 1994) ("[B]lanket

- 8 -

assertion of the privilege [against self-incrimination] is an
inadequate basis for the issuance of a stay.”))

   “In general, absent a showing of undue prejudice upon
defendant[s] or interference with [their] constitutional rights,
there is no reason why plaintiff should be delayed in [its]
efforts to diligently proceed to sustain [its] claim.”  Hicks v.
City of New York, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003)
(internal quotations omitted).  Here, where no indictment has yet
been filed, its imminence has been disproven, and the civil case
could be unfairly prejudiced by further delay, the balance tilts
in favor of the plaintiff.  See Barry Farm Resident Council, 1997
WL 118412, at *3 (finding that because no criminal indictments
had been filed, any harm alleged by civil defendant was “entirely
speculative” and further stating that “[i]f and when criminal
indictments are filed, and Fifth Amendment issues arise, there
will be time enough to deal with the problems they might cause”).

   Where a civil action initiated by the government has no
distinct statutory or enforcement aim and appears to be purely
opportunistic or manipulative, this factor weighs heavily in
favor of a stay.  Cf. Gordon, 427 F.2d at 580 (quoting United
States v. Kordel, 397 U.S. 1, 11 (1970) (“It would stultify
enforcement of federal law to require a governmental [regulatory]
agency . . . invariably to choose either to forgo recommendation
of criminal prosecution once it seeks civil relief, or to defer

civil proceedings pending the ultimate outcome of a criminal
trial.")) Absent such exceptional circumstances or behavior,
however, the government and its agencies are permitted to pursue
valid civil relief -- even for money damages only -- prior to,
simultaneous with, or subsequent to criminal investigation or
indictment. Dresser, 628 F.2d at 1376. Although the same
government is the party in interest in both the civil proceeding
and the criminal investigation, nothing supports an inference
here that the government has used or will use the civil action to
gain an advantage in the criminal case. See Kordel, 397 U.S. at
11-12 (identifying circumstances, including when the government
brings a civil action solely to obtain evidence for its criminal
prosecution or failed to advise a civil defendant that a criminal
investigation is pending, in which a criminal indictment
following a civil action might be unconstitutional or improper).

While allowing civil discovery to proceed may afford the
government the opportunity to gain evidence that it may not be
entitled to under the more restrictive criminal discovery rules,
see Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007,
1010 (E.D.N.Y. 1992), if and when discovery becomes necessary,
protective orders and other remedial measures may be taken.
Gordon, 427 F.2d at 580-81.

- 10 -

The movants request "a stay of all proceedings in the instant civil litigation until the completion of any criminal proceedings that may be initiated against" them.  (Davis Mot. to Stay at 1; McCraney Mot. to Stay at 1; Bachner Mot. to Stay at 2.)  Although "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself," a court may abuse its discretion if it grants "a stay of indefinite duration in the absence of a pressing need."  <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936).  Given that no indictment has been returned and the civil case has been pending for more than a year, staying the civil action until the completion of any criminal proceeding would lead to unwarranted delay of this action.

<u>CONCLUSION AND ORDER</u>

The pre-indictment status of the criminal investigation militates against entering a stay of all or a portion of the proceedings.  However, if the status of the criminal proceedings changes or if it appears the government is using the parallel actions to gain undue advantage, the movants may re-file their motion to stay.  Accordingly, it is hereby

ORDERED that Davis' Motion [96] to Stay, Bachner's Motion [107] to Stay, and the McCraneys' Motion [109] to Stay be, and hereby are, DENIED.  It is further

- 11 -

ORDERED that Davis' Motion [115] for Extension of Time to Answer the United States' Amended Complaint be, and hereby is, GRANTED.  His answer shall be filed within ten days.

SIGNED this 31st day of March, 2007.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge