UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES, <u>ex rel.</u>**   )
**WESTRICK,**                       )
                                    )
        **Plaintiffs,** )
                                    )
        v.            )   Civil Action No. 04-280 (RWR)
                                    )
**SECOND CHANCE BODY ARMOR,**       )
**INC. <u>et al.</u>,**             )
                                    )
        **Defendants.**  )
_____ )

## MEMORANDUM OPINION AND ORDER

The government, by relator Aaron J. Westrick, filed a complaint against defendants Second Chance Body Armor, Inc. and related entities (collectively "Second Chance"), Toyobo Co., Ltd., Toyobo America, Inc. (collectively "Toyobo"), and individual defendants Thomas Bachner, Jr., Richard Davis, Karen McCraney, and James "Larry" McCraney, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, as well as common law claims in connection with the sale of Zylon body armor. The individual defendants have moved to transfer venue to the Western District of Michigan.[1] Because the individual defendants have not shown that a transfer is in the interest of justice, their motion will be denied.

---

[1] The individuals defendants also moved for a hearing on their motion to transfer. That motion will be denied.

BACKGROUND

The background of this case is discussed fully in <u>United States ex rel. Westrick v. Second Chance Body Armor, Inc.</u>, 685 F. Supp. 2d 129 (D.D.C. 2010). Briefly, the government alleges that Second Chance and Toyobo contracted for Toyobo to supply Second Chance with the synthetic fiber "Zylon" for use in manufacturing Second Chance bulletproof vests. Zylon -- which Toyobo manufactured in Japan (Am. Compl. ¶ 47) -- deteriorated more quickly than expected. <u>Westrick</u>, 685 F. Supp. 2d at 132. The government alleges that Second Chance and Toyobo knew about the accelerated degradation but concealed information about it from the government, which purchased Second Chance vests through various programs. <u>Id.</u> Second Chance and its related entities were primarily Michigan corporations,[2] Toyobo Co., Ltd. is a Japanese Corporation, Toyobo America, Inc. is a New York Corporation, and the individual defendants -- who served as officers of Second Chance -- all resided in Michigan when the government filed its amended complaint in September 2005. (Am. Compl. ¶¶ 6-19.)

In November 2005, defendants Larry and Karen McCraney filed a motion to dismiss or, in the alternative, to transfer venue to the Western District of Michigan. In January 2006, they withdrew

---

[2] Second Chance Body Armor, Inc. filed for bankruptcy in the Western District of Michigan in 2004.

their motion and stipulated that venue was proper in this district. Toyobo filed a motion to dismiss, discovery began while that motion was pending, and the motion to dismiss was later denied. Westrick, 685 F. Supp. 2d at 142. Toyobo unsuccessfully moved for reconsideration, United States ex rel. Westrick v. Second Chance Body Armor, Inc., 709 F. Supp. 2d 52 (D.D.C. 2010), and a scheduling conference was held at which the close of discovery was set for January 2012. In July 2010, the individual defendants moved to transfer venue, arguing that continuing to defend the suit in this district would impose on them financial hardship and inconvenience. (Defs.' Mem. of Law in Supp. of Their Mot. for Change of Venue ("Defs.' Mem.") at 1-2.) The government and the relator oppose the motion, arguing that transferring the case would inconvenience the other parties and witnesses and waste judicial resources.[3] (Opp'n of the U.S. to the Mot. to Change Venue ("Gov't Opp'n") at 2; Pl.-Relator's Opp'n to Mot. for Change of Venue ("Pl.-Relator's Opp'n") at 2.)

DISCUSSION

A case may be transferred to another venue under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice[.]" See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). The moving party carries the burden of

---

[3] Defendant Toyobo filed a stipulation stating that it does not oppose the motion.

showing that a transfer is appropriate.  Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008); Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006).  Because "'it is perhaps impossible to develop any fixed general rules on when cases should be transferred[,]' . . . the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness."  SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974) (en banc)).

"Any transfer under § 1404(a) is restricted to a venue where the action 'might have been brought.'"  Robinson v. Eli Lilly & Co., 535 F. Supp. 2d 49, 51 (D.D.C. 2008) (quoting 28 U.S.C. § 1404(a)).  A plaintiff may bring a claim under the FCA "in any judicial district in which . . . , in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."  31 U.S.C. § 3732(a); see also United States v. Intrados/Int'l Mgmt. Grp., 265 F. Supp. 2d 1, 6 (D.D.C. 2002). Because many of the defendants either reside or transact business in the Western District of Michigan, there is no question -- and the relator and the government do not contest -- that this action could have been brought in that district.[4]  (See Gov't Opp'n at 9

---

[4] Although it concedes that the case could have been brought in the Western District of Michigan under the FCA venue provision, the government suggests two reasons why venue may

(noting that "this action could have been brought in the W.D. Michigan"); Pl.-Relator's Opp'n at 4.)

After determining that venue in the proposed transferee district would be proper, a court then "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to [the] private concerns [of the parties], come under the heading of 'the interest of justice.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).

I. PUBLIC INTERESTS

The public factors to assess include "1) the local interest in making local decisions about local controversies, 2) the potential transferee court's familiarity with applicable law, and

---

still not be proper in the Western District of Michigan. First, some of the individual defendants stipulated to venue in the District of Columbia. (Gov't Opp'n at 3.) However, the individual defendants have not moved under 28 U.S.C. § 1406(a) to transfer for improper venue but rather have moved under 28 U.S.C. § 1404(a) to transfer in the interests of justice. Because transfer under § 1404(a) could be appropriate even if venue in this district is proper, the stipulation is immaterial.

Second, the government notes that a court in the Western District of Michigan dismissed under the *forum non conveniens* doctrine another action against defendant Toyobo, see German Free State of Bavaria v. Toyobo Co., Ltd., 480 F. Supp. 2d 948, 957 (W.D. Mich. 2007), and speculates that there may be additional procedural litigation if Toyobo moves to dismiss on those grounds in the Western District of Michigan should the motion to transfer be granted. (Gov't Opp'n at 9-10 & n.7.) However, a *forum non conveniens* dismissal has no bearing on whether venue was proper in the dismissing jurisdiction, see id. at 951-52, and there is no question that the FCA authorizes venue in the Western District of Michigan. See 31 U.S.C. § 3732(a).

3) the congestion of the transferee court compared to that of the transferor court." Demery v. Montgomery Cnty., Md., 602 F. Supp. 2d 206, 210 (D.D.C. 2009). All federal courts are presumed equally familiar with the law governing the plaintiffs' FCA claims, and this factor does not weigh either for or against transfer. See Montgomery, 532 F. Supp. 2d at 34.

The other two factors, however, weigh against transfer. Since millions of dollars in allegedly false claims were submitted in the District of Columbia (Gov't Opp'n at 19), this district has a significant interest in providing a forum for these allegations of fraud. See Dooley v. United Techs. Corp., 786 F. Supp. 65, 73 (D.D.C. 1992) (involving Racketeer Influenced and Corrupt Organizations Act claims), abrogated on other grounds by FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1099 (D.C. Cir. 2008). With respect to the third factor, there may be a shorter median disposition time for cases in the Western District of Michigan than for cases in this district. (See Defs.' Mem. at 16 (comparing median disposition time of 26.4 months in the Western District of Michigan to a median disposition time of 33.1 months in this district).) Nonetheless, the risk of injecting unnecessary delay in resolving this case may be greater if this seven-year-old case is transferred. This Court is familiar with the multiple issues and lengthy procedural history of the case, and decided Toyobo's dispositive motions. Given the parties'

voluminous filings, this experience is not insignificant, and a court in the Western District of Michigan will likely require a substantial amount of time to familiarize itself with the case. See Savoy Indus., Inc., 587 F.2d at 1156 (affirming denial of motion to transfer in part because of the delay that would arise while the transferee court familiarized itself with the complex case that the district court was already prepared to try); cf. Devaughn v. Inphonic, Inc., 403 F. Supp. 2d 68, 73 (D.D.C. 2005) (noting that "the case has not progressed so far that delay would result if another court must familiarize itself with the disputed facts or the procedural background"). Finally, to conserve judicial resources, "[l]itigation of . . . related claims in the same forum is strongly favored." Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C. 1979); see also SEC v. Daly, Civil Action No. 05-55 (CKK), 2006 WL 6190699, at *5 n.1 (D.D.C. Feb. 11, 2006). Because there are four other related cases pending before this Court, transferring this case would allocate inefficiently scarce judicial resources. Thus, the public factors weigh decidedly against transfer.

## II. PRIVATE INTERESTS

The private factors to assess include

> 1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in

> one of the districts, and 6) the ease of access to sources of proof.

Demery, 602 F. Supp. 2d at 210.

    A.   <u>Forum choices</u>

A plaintiff's choice of forum is entitled to deference, unless that forum has no meaningful relationship to the plaintiffs' claims or to the parties. <u>See</u> <u>Veney v. Starbucks Corp.</u>, 559 F. Supp. 2d 79, 84 (D.D.C. 2008). Because the United States is the real party in interest in a qui tam action filed by a relator, the United States' choice of forum is entitled to principal deference. <u>See</u> <u>United States ex rel. Penizotto v. Bates E. Corp.</u>, No. CIV.A. 94-3626, 1996 WL 417172, at *2 (E.D. Pa. July 18, 1996) (surveying other courts). Here, the government and the relator have chosen the same forum, as the relator filed suit in this district and the government did not disturb that choice when it elected to intervene. (Gov't Opp'n at 24; Pl.-Relator's Opp'n at 5.) The individual defendants carry a weighty burden to demonstrate that the plaintiffs' forum choice should be disturbed in favor of the individual defendants' choice. Since there is at least some meaningful relationship between the plaintiffs' claims and the parties and this district, <u>see</u> <u>infra</u> II(B), the individual defendants have not carried that burden.

B.  <u>Where the claims arose</u>

The individual defendants argue that the plaintiffs' claims arose in Michigan because Second Chance was a Michigan corporation, and it developed and tested its vests in Michigan. (Defs.' Mem. at 9.)  Where "'most of the relevant events occurred elsewhere,'" deference to the plaintiff's choice of forum is weakened. <u>Aftab v. Gonzales</u>, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (quoting <u>Hunter v. Johanns</u>, 517 F. Supp. 2d 340, 344 (D.D.C. 2007)).  However, the government alleges that multiple aspects of the fraud took place outside of Michigan, including in this district.  Specifically, the government claims that thousands of Second Chance vests were shipped to federal agencies in Washington, D.C. resulting in approximately $1 million in claims for payment.  (Gov't Opp'n at 19.)  State, local, and Indian law enforcement agencies submitted in this district to the federal government over $12.5 million in claims for reimbursement for vests purchased under the Bullet Proof Vest Grant Partnership Act.  (<u>Id.</u>; Am. Compl. ¶ 29.)  Toyobo manufactured the Zylon fiber in Second Chance vests in Tsuruga, Japan.  (Am. Compl. ¶ 47.)  Second Chance and Toyobo representatives met in Los Angeles, California in 2001 to discuss a strategy to cope with Zylon's degradation and in Osaka, Japan in 2002, where Toyobo asserted that further testing would prove that Zylon's fiber strength would stop deteriorating over time.  (Am. Compl. ¶¶ 81,

88.) Ultimately, while the parties do not allege that most of the relevant events occurred in this district, neither do the parties allege that most of the relevant conduct occurred in the Western District of Michigan. In any event, the conduct that gives rise to an FCA claim is filing a false claim for payment, and this district was the locus for many such filings in this case. This factor does not weigh in favor of transfer.

    C.    <u>Convenience of the parties</u>

A court may consider whether litigating in a particular forum would cause a party to suffer a hardship, such as from significant expense. <u>Kotan v. Pizza Outlet, Inc.</u>, 400 F. Supp. 2d 44, 50 (D.D.C. 2005). The party requesting transfer should provide documented proof of financial hardship. <u>See</u> <u>Daly</u>, 2006 WL 6190699, at *5. However, "'[u]nless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others.'" <u>Kotan</u>, 400 F. Supp. 2d at 50 (quoting <u>Moses v. Bus. Card Express, Inc.</u>, 929 F.2d 1131, 1139 (6th Cir. 1991)). Thus, for this factor to weigh in favor of transfer, litigating in the transferee district must not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties. <u>See</u> <u>Daly</u>, 2006 WL 6190699, at *5.

The individual defendants assert that continuing to litigate in this district "will translate into ever mounting expenditures

for flights, hotel accommodations, food, and other miscellaneous expenses[.]" (Defs.' Mem. at 11.) In support of their argument, the individual defendants cite defendant Bachner's proof of claim filed on December 1, 2009 in the Second Chance Bankruptcy action in the Western District of Michigan. That proof of claim estimated $1,000,000 in future legal fees for Bachner to defend himself through trial and $40,000 in anticipated travel fees. (Defs.' Reply, Ex. 1 at 10.) The individual defendants base their argument that continuing to litigate the case in this district is prohibitively expensive on travel and miscellaneous costs alone; they do not argue and have not provided evidence that litigating in Michigan will reduce their legal fees. Since the individual defendants' estimated travel expenses make up only a small fraction of the costs they expect to incur litigating the suit in this district, they have not shown that transferring this case will result in more than marginal relief from any financial hardship they may be suffering. Thus, they have not shown that transferring the case will lead to a net increase in convenience for all parties. This factor, therefore, does not weigh in favor of transfer.

    D.   <u>Convenience of witnesses</u>

When considering the convenience of witnesses, a court must pay particular attention to whether important witnesses will be available to give live trial testimony. <u>Montgomery</u>, 532 F. Supp.

2d at 33. Because the FCA provides for nationwide service of trial subpoenas, 31 U.S.C. § 3731(a), all prospective witnesses will be available for trial in either district. A transferee district, though, may be more convenient for witnesses even if the witnesses would not be unavailable to testify in the transferor district. Id. at 33 n.5. While the individual defendants have identified seven trial witnesses for whom the Western District of Michigan would represent a more convenient forum (Defs.' Mem. at 12-13), the plaintiffs have identified twelve witnesses who live in the Washington, D.C. area and another five witnesses who live in the Boston-Washington corridor and for whom this district would represent a more convenient forum in which to testify.[5] (Gov't Opp'n at 18; Ex. 3.) This factor weighs against transfer.[6]

## CONCLUSION AND ORDER

The individual defendants have not shown that a transfer to the Western District of Michigan is in the interests of justice. Accordingly, it is hereby

---

[5] The individual defendants do not dispute that this district will be more convenient for these witnesses. Instead they argue that the government will be better able to afford to transport these witnesses to the Western District of Michigan. (Defs.' Reply at 14.) This argument bears on the convenience of the parties, not the convenience of the witnesses.

[6] Neither party argues that either district provides easier access to sources of proof.

ORDERED that the individual defendants' motion [237] to transfer venue be, and hereby is, DENIED. It is further

ORDERED that the individual defendants' motion [245] for a hearing be, and hereby is, DENIED.

SIGNED this 24th day of March, 2011.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge