UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., <br>   AARON J. WESTRICK, Ph.D., <br><br>         Plaintiffs, <br><br>     v. <br><br> SECOND CHANCE BODY ARMOR, INC., <br>   et al., <br><br>         Defendants. | Civil Action No. 04-0280 (PLF) |

MEMORANDUM OPINION AND ORDER

        This matter is before the Court on the Motion in Limine [Dkt. No. 533] of the United States to Exclude Evidence of Substantially Different Zylon Vests by Pacific Safety Products, Inc. ("PSP"). Upon careful consideration of the motion, Toyobo's opposition, and the reply of the United States, the Court will grant the motion.

        The United States says the PSP vests were designed differently from Second Chance's vests and points out a number of differences that it says distinguish the vests that PSP manufactured and tested from the Second Chance vests at issue in this case. For example, the vests tested as a part of PSP's Zylon Integrity Project ("ZIP testing") contained only one-third Zylon in contrast to the Second Chance vests, most of which contained 100% Zylon; the PSP vests were designed with a desiccant to absorb moisture, while Second Chance vests contained no such desiccant; and the PSP vests that were tested were not sold in the United States but were returned to PSP for testing by the Army of the Republic of Singapore. See Motion at 3-4. The United States also points out that only three PSP vests were sold in the United States, Reply at 1,

and that the United States never has had access to the PSP vests to do its own testing or cross-check on the ZIP tests' reliability, because PSP destroyed the vests after testing. Motion at 9-10. Because of these differences, the United States says that any testimony about PSP vests or PSP testing would be irrelevant and, even if relevant or probative of some issue in the case, any testimony about them would be both misleading and confusing to the jury.

Toyobo responds that the differences cited by the United States between PSP's vests and Second Chance's vests are beside the point. According to Toyobo, the purpose of the proffered testimony is to educate the jury about the actions one vest manufacturer took to account for the degradation data Toyobo had disclosed and to show that PSP's redesign of its vests is probative of the adequacy of Toyobo's disclosures inasmuch as those disclosures prompted the testing and the changes in vest design made by PSP. Toyobo argues that PSP's decision to begin a monitoring program in response to Toyobo's disclosures of "degradation of Zylon in heat and humidity" speaks to the adequacy of Toyobo's disclosures and its requests that customers check their products in light of the disclosures. Opp. at 4. It therefore seeks to offer Bradley Field "as a fact witness based on Mr. Field's first-hand knowledge." Id. at 5.

The Court is inclined to agree with the United States that the probative value of the PSP evidence proffered by Toyobo is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury . . . ." FED. R. EVID. 403. Such evidence also may be cumulative, see id., since Toyobo seems to rely at least as much for its position on correspondence between Second Chance and Toyobo as it does on PSP's testing. See Opp. at 4. More importantly, the Court agrees with the United States that Toyobo is foreclosed from introducing this evidence. It essentially is attempting to resurrect its withdrawn expert witness, Bradley Field, as a fact witness and to have him provide as fact testimony what

2

are essentially his opinions, and it seeks to do so without first permitting the Court to evaluate Mr. Field's methodology under Daubert and Rule 702 of the Federal Rules of Evidence. See Reply at 2-3, 5-6.[1] Toyobo will not be permitted to do so because it represented to counsel for the United States during the deposition of Mr. Field that Toyobo was not presenting and would not present Mr. Field as a "precipient or fact witness." Id. at 1; see id. at 5 n.6. Relying on that representation, counsel for the United States chose not to ask any further questions of Mr. Field at the deposition. The complete colloquy between government counsel and Toyobo's lawyers at the Field deposition was as follows:

> MS. BENTLEY: The only remaining issue is we had some discussions earlier about some used Kevlar testing that had been done by PSP pursuant to the confidentiality order. As long as Toyobo is not presenting Mr. Field as a [p]recipient witness, we are going to forego trying to seek that in discovery. Is that agreeable?
>
> MR. GIBSON: We agree to that.
>
> MS. CHORPENING: He is only being presented here as your expert witness, correct?
>
> MR. GIBSON: That is correct.
>
> MS. CHORPENING: Thank you, Mr. Field, no further questions.

Reply Ex. 2, 07/12/2012 Field Deposition Transcript at 358:15-359:1. For all of these reasons, it is hereby

ORDERED that the United States' Motion in Limine [Dkt. No. 533] of the United States to Exclude Evidence of Substantially Different Zylon Vests by Pacific Safety Products, Inc. is GRANTED; and it is

---

[1] The United States puts it this way: "Toyobo attempts to take an unqualified expert witness facing a Daubert motion, withdraw his expert designation, and re-cast him as a factual witness on the suitability of Zylon for ballistic application in contravention of [] Federal Rule[s] of Evidence and the Daubert standard." Reply at 5.

3

FURTHER ORDERED that all evidence relating to the PSP vests and ZIP testing is excluded from this trial.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: February 21, 2018